IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-10112-01-JTM |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD BEASLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO SUPPRESS EVIDENCE AND
## MEMORANDUM IN SUPPORT

COMES now the Defendant, Gerald Beasley, by and through his attorney, Michael

D. Hepperly, and moves the Court pursuant to Rule 12 (b)(3)(c) and the Fourth

Amendment to the United States Constitution to suppress any evidence discovered as a

result of the search of 1122 N. Piatt Ave., Wichita, Kansas and Tiara's Place located at 1339

N. Hillside, Wichita, Kansas, on or about June 12, 2012. The Defendant, through counsel,

respectfully offers the following facts, authorities and argument in support of this

motion.

On June 12, 2013, at approximately 9:00 a.m., a federal search warrant was executed at 1122 N. Piatt Avenue simultaneously with the federal search warrant executed on Tiara's Place located 1339 N. Hillside.  The warrant, issued by U.S. Magistrate Judge Kenneth Gale, was based on an affidavit prepared by Jason E. Fuller, a Special Agent of the ATF.

The search warrants for 1122 N. Piatt Avenue and 1339 N. Hillside were not supported by probable cause because the information contained in the supporting affidavit was based on:

    (1)    Fruit of the Poisonous Tree;
    (2)    stale and impermissibly broad information obtained from three informants, who were unreliable; and
    (3)    impermissibly relied upon an anonymous phone call

**Fruit of the Poisonous Tree**

Gerald Beasley has filed Motions to Suppress the fruits of the wiretaps on Target Telephone #1 and Target Telephone #2 involving a phone numbers allegedly associated with Gerald Beasley and Antoine Beasley. Those motion seeks suppression of all of the evidence derived from that wiretap due to lack of probable cause and for violations of the necessity requirements of 18 U.S.C. § 2518(1)(c). The probable cause section of the affidavit for the search warrant for 1122 N. Piatt and Tiara's Place at 1339 N. Hillside rely heavily on evidence illegally derived from the intercepts of Target Telephone #1, and in turn, the evidence illegally derived from the intercepts of Target Telephone #2. The government, however, cannot base a search warrant on the illegal fruits of a previous wiretap. *See United States v. Giordano*, 416 U.S. 505. 529-30 (1974):

> Even though suppression of the wire communications intercepted under the October 16, 1970, order is required, the government nevertheless contends that communications intercepted under the November 6 extension order are admissible, because they are not "evidence derived" from the contents of communications intercepted under the October 16 order within the meaning of §§ 2515 and 2518(10)(a). This position is untenable.

In other words, the government cannot take the seeds from the poisonous fruit and plant them in the affidavit of a second, or even third search warrant in hope that the fruit will no longer be poisonous. Once poisonous the fruit will remain poisonous. *See United States v. Wong Sun*, 371 U.S. 471 (1963).

Therefore, when reviewing the current application to determine if it supports probable cause, the Court must ignore any paragraphs that contain information derived from the wiretaps on Target Telephones #1 and #2. This would include paragraphs: 15, 15a, 15b, 15c, 15d, 15e, 15f, 15f, 15g, 15h, 15i, 15j, 15k, 15l, 15m, 15n, 15o, 16, and 17.

**PROBABLE CAUSE**

Paragraphs 7 and 8 discuss real property Gerald Beasley owns or has an interest in, his business of renovating and renting real estate, owning and operating Tiara's Place, and that the Kansas Department of Labor did not have any wages reported for Gerald Beasley since 2005. It should be noted that 1122 N. Piatt was an owner financed home being sold to Gerald Beasley, he no longer had any interest in two of the subject properties listed, and there is nothing nefarious about Gerald Beasley not having a record of wages with the Kansas Department of Labor. As an owner/operator of Tiara's Place, Gerald Beasley's income was

3

reported, but as is common in sole proprietorship businesses, it would not have been reported as wages.

The interview with Raymond Jones described in paragraphs 9 and 9a took place ten months prior to the execution of the search warrant on 1122 N Piatt and 1339 N. Hillside, and several months before any investigation into Gerald Beasley. There was no supporting evidence or corroboration by Jones that he had seen a kilogram quantity of heroin. Jones had only met Gerald Beasley earlier that year and had not been to 1122 N. Piatt, or to any of Gerald Beasley's houses. The information provided by Jones was determined not to be reliable and was not a consideration in commencing an investigation into Gerald Beasley. The information was stale and used only to help bolster the affidavit. It cannot be part of the probable cause determination. *See United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004)("probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched" ).

Likewise, the interview on December 5, 2012, by Shannon Dameron which was described in paragraph 10 and 10a was stale and unreliable. Dameron was interviewed no less than four times with the last interview taking place on December 18, 2012, six months prior to the search.

Dameron's interviews consisted of generalizations, embellishments, guesses, inconsistencies and lies, none of which was conveyed to the magistrate issuing the warrant. Rather, SA Fuller chose to include snippets of Dameron's statements which he believed

would support a probable cause determination and omit those that would not. Whether those snippets were accurate and truthful was irrelevant for his intended purpose.

For example, the affiant relies the statement of Dameron regarding Gerald Beasley selling drugs when she said, "Well he sells drugs, pills, stuff like that, he sells big dope." Det. Antle asked what kind of "dope." Dameron stated, "Crack, cocaine." However, in her next interview of December 12, 2012, when she was asked about Gerald Beasley dealing drugs, she stated, "I don't think that's his business." and she told Det. Antle that she had never seen him with any drugs. When she was asked what she knew about his dope, she stated, "I don't know a lot about it. I just know he has it."

Regarding the counterfeiting checks, she answered that she had never seen him making any checks nor had she seen any of the equipment to make counterfeit checks. When asked if he ran a lot of check stuff out of his rental properties. She stated, "Uh huh, he doesn't dirty his own home."

Affiant relies on Dameron's statement that every morning around 6:00 a.m., calls would be placed between Gerald Beasley and Terry Ross regarding fraudulent checks. Yet, a review of the toll records from January 2008 through January 2013, do not reflect those early morning 6:00 a.m. calls which affiant relies upon for probable cause determination. The toll records were available to law enforcement to determine the veracity of Dameron's statement, but SA Fuller clearly failed to review them.

Dameron had never seen Gerald Beasley with a gun. She had no first hand knowledge whether he had a weapon, but declared she was sure he had one.

She told Det. Antle that Gerald Beasley buys papers which affiant determined to mean police records, but when questioned further, she had never seen any and had no first hand knowledge.

Although not included in the affidavit, Dameron told Det. Antle that Gerald Beasley burned his home down for the insurance and that he was big into insurance fraud. Needless to say, the home that was burned was not insured.

In response to how Dameron was in possession of the information she provided, she stated that Terry Ross told her. Dameron for all her blubbering about had never met Gerald Beasley. She stated that he would not have anything to do with her. Dameron had seen Gerald Beasley less than a dozen times in the one to one and a half years that she had been associated with Terry Ross and those were not interface. In Dameron's own words, she is an alcoholic and addicted to crack. She is simply not a reliable source and any information she may have provided was stale at the time of the affidavit for a search warrant.

Paragraph 11 of the affidavit discusses a February 2013, interview with Terry Ross. Ross had been re-arrested on new battery charges while he was out pending sentencing for a stabbing during a narcotics transaction. Because of these new charges, Ross had a $125,00 bond and he was angry at Gerald Beasley for not posting the bond.

6

Ross's wanted to meet with law enforcement to mitigate total sentencing on all his cases. During the interview, Ross was advised by Det. Tuzicka and Det. Ralph that he was not being truthful with them. The detectives later advised Ross that because of his criminal history and his unreliable nature, he would not be a witness.

Terry Ross is also responsible for the misinformation provided to Shannon Dameron.

Paragraph 12 identifies a November 8, 2012, anonymous phone call used as a basis for probable cause. The caller identified Gerald Beasley as being involved in criminal activity including fraudulent checks.  The anonymous caller further stated that Gerald Beasley sold heroin, cocaine rocks, marijuana, and prescription pills and stored the drugs at 1122 Piatt. The caller did not have Gerald Beasley's home address.  In truth, 1122 N. Piatt is where Gerald Beasley resided, it was not a stash house, yet this anonymous caller, Ross and Dameron all attempted to designate it as a stash house.

In paragraph 13, affiant attempts to link Gerald Beasley to Herbert Jones who in August 2011, sold a total of $300 crack cocaine on two separate occasions to an undercover officer. This transaction by Herbert Jones was nearly two years earlier and the affiant bases his conclusion on nothing but speculation and assumption that Gerald Beasley provided narcotics to Herbert Jones. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) ([the magistrates] action[s] cannot be a mere ratification of the bare conclusions of others). While under surveillance, Gerald Beasley was never seen providing or selling any controlled substances to Herbert Jones. A probable cause determination cannot rely on stale and speculative

information with no supporting facts of wrong doing.

Paragraph 14 discusses a March 19, 2013, surveillance in which the affiant further states:

> . . . investigators observed a Ford F-150, normally utilized by Antoine Beasley (it was noted that the license plate of the truck could not be confirmed), arrived at 655 North Estelle. One of the occupants (neither Gerald Beasley or Antoine Beasley were identified) was observed carrying some sort of bag into the residence. The truck was then observed traveling to SUBJECT PREMISES #1 (1122 N. Piatt). At SUBJECT PREMISES #1, a passenger in the F-150 exited the vehicle and got into a white Grand Am parked at the residence. The white Grand *Am* then returned to 655 N. Estelle and was observed meeting with a bald Hispanic male driving a silver Honda Ridgeline registered to Juan J. IBARRA. IBARRA was observed carrying some sort of bag out of the residence on Estelle.

This section of paragraph 14 is also filled with assumptions and conclusions that are unsupported by facts. The affiant claims earlier that 1122 North Piatt is a stash house, but presents no evidence to support this charge. The affiant states that "one of the occupants" of the F-150 "carried *some sort of bag*" into the North Estelle address before traveling to 1122 N. Piatt where the passenger of the truck got in a Grand Am. The questions are endless: Who was the occupant that got out of the truck?; Was it the passenger or the driver?; Was it Antoine Beasley or someone else?; Was Gerald Beasley even present? (The affiant states that the F-150 is a "model and color normally utilized" by Antoine Beasley, but could not verify the tag number implying that it may also be used by other unnamed individuals or may not even be Antoine Beasley's vehicle); Did the person who carried the "bag" into Estelle get back into the truck and travel to the Piatt address?; Was the person who carried the "bag"

into Estelle the same person who drove back to Estelle in the white Grand Am?; Was it actually Juan Ibarra at North Estelle or was it just someone driving a vehicle register to him?; Did this person, the affiant assumes is Juan Ibarra, carry the same bag out of the residence as was carried in earlier (in both instances it is described as "some sort of bag")?

While this can arguably be considered suspicious behavior, it does nothing to establish probable cause to obtain a warrant to search 1122 N. Piatt or 1339 Hillside. First of all, there is no indication where the bags came from, much less that they came from 1122 N. Piatt or 1339 Hillside, what was in the bag, or who was involved in the activity. This information in the affidavit does not provide a link of any criminal or illegal activity by Gerald Beasley, 1122 N. Piatt or 1339 Hillside. *See United States v. Gonzales*, 399 F.3d 1225, 1228, (10[th]Cir. 2005) (for a search to be reasonable under the Fourth Amendment there must be a "nexus between the contraband to be seized or suspected criminal activity and the place to be searched").

Paragraph 14 continues;

Investigators learned that an investigation conducted by the DEA El Paso Divisional Office resulted in the seizure of over ten kilograms of cocaine in October 2012. A confidential source (CS) that was developed from the investigation informed agents that Juan IBARRA, Inocente IBARRA, and Myra IBARRA were all involved in transporting multiple kilogram loads of cocaine to Wichita, KS on a weekly basis and were then sending bulk currency back to El Paso, TX.

Without having positively identified the individual seen at North Estelle on March 19, 2013 as Juan Ibarra, (the individual is described as a bald Hispanic male driving a vehicle

registered to Ibarra), or even one of his brothers, this information about Juan Ibarra is completely irrelevant to a probable cause determination.

In paragraph 16 the affiant describes an incident that takes place on May 16, 2013 at 1339. Hillside, the location of Tiara's Place Restaurant. According to the affidavit the incident involved an exchange of "white containers" between Antoine Beasley, Gerald Beasley, and Juan Ibarra. The problem with this paragraph is that there is no information that any of these "white containers" had cash or narcotics and there is no link to 1122 N. Piatt. Without a link to N. Piatt, this information provides nothing to support probable cause.

Paragraphs 18 and 19 discuss two unknown black males loading an antique Buick onto a tow truck at 1122 North Piatt and taking it to a storage facility on East 21st Street in Wichita. The facility was rented by Orville Smith with "Gerald" having authorized access. There was also surveillance of a U-Haul truck backed into the driveway at 1122 N. Piatt (referred to as "the stash house"). The U-Haul was followed to the storage facility on East 21st Street. Nothing in the affidavit describes what may have been moved in the U-Haul to the storage unit. Affiant speculated that Gerald Beasley was moving assets and other crime related items to the storage facility. This was, they believed, because of statements that one of Gerald Beasley's girlfriends was talking to the police about Gerald Beasley's illegal activities. Apparently this conclusion was based on an intercepted conversation between Antoine and Gerald Beasley, which was not significant enough to include in the affidavit. If affiant was correct in his speculation about removing assets and evidence, then there would

be no evidence of any criminal activity remaining at 1122 N. Piatt. *See United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004) ("probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched" ). Further, the only items located from the search of the storage facility was the antique car, a car cover and miscellaneous items for the antique car. Clearly, there is no nexus of illegal activity in this information to further probable cause for the search of 1122 N. Piatt and 1339 Hillside. *See United States v. Gonzales*, 399 F.3d 1225, 1228, (10th Cir. 2005).

In paragraph 20, affiant describes a trash pull of a bin that had been placed *near* the curb of 1122 N. Piatt. Affiant does not provide any evidence that the bin or the material found therein came from 1122 N. Piatt.

Paragraph 21, describes Gerald Beasley being seen at 1122 N. Piatt on June 3, 2013.

The remainder of the affidavit is comprised of the usual generalizations about drug traffickers and money launders that accompany every such search warrant. Generalizations that the affiant has learned "based on [his] training and experience, consultation with other experienced investigators, and other sources of information." None of which assist in the determination of probable cause.

In accessing whether the warrant was based on probable cause, each supporting fact or episode is not viewed in isolation. *United States v. Cantu,* 405 F.3d 1173, 1177 (10th Cir. 2005). Rather "While one fact alone may not support a finding of probable cause, a

cumulative assessment may indeed lead to that conclusion." It is also apposite to apply this standard to when a cumulation of the facts for probable cause determine are all based on stale information, inconsistencies, unreliable sources and assumptions.

The "good faith" exception to the exclusionary rule created in *United States v. Leon*, 468 U.S. 897 (1984), is inapplicable herein. In *Leon,* the Supreme Court modified the Fourth Amendment's exclusionary rule to provide that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant. *Id.* at 913. The "good faith" exception permits the admission of evidence from a search warrant subsequently invalidated by a lack of probable cause. *Id.* at 922.

In *Leon*, the Court made it clear that it is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in the opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *Leon* at 923. *See also Whiteley v. Warden*, 401 U.S. 560, 568 (1971).

The information provided to the magistrate judge concerning Gerald Beasley was erroneous and misleading. Even if the information was not knowingly false, including such misstatements in an application to obtain a warrant to search someone's home and business

was reckless.  The police knew or should have known the misinformation provided by the sources of information or confirmed the information before misleading the magistrate judge. There was no evidence of any confirmed recent drug or fraud activity by Gerald Beasley.  This information was calculated to persuade the judge to issue a search warrant. The truth would have caused the magistrate judge to question if there was a fair probability that contraband or evidence of a crime would be found at 1122 N. Piatt, Gerald Beasley's home, or at 1339 Hillside, Tiara's Place Restaurant, Gerald Beasley's owner/operator business.

There are circumstances when evidence seized in good faith pursuant to a defective warrant will be suppressed.

> Suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, or if the issuing magistrate wholly abandoned his detached and neutral judicial role. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Leon* at 898-899. It is difficult to say the magistrate wholly abandoned his detached and neutral judicial role. It is not hard to say that the magistrate was misled by the affidavit. Arguably, this affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Any and all evidence seized pursuant to the June 12, 2013, search warrants of 1122 N. Piatt and 1339 Hillside was fruit of an illegal search and is inadmissible under *Wong Sun v. United States*, 371 U.S. 471 (1963).

13

WHEREFORE, Defendant Beasley moves the Court for an order in conformity with the above and foregoing Motion and such other and further relief as the Courts deems just. Counsel respectfully requests a hearing and oral argument on this motion.

RESPECTFULLY SUBMITTED,

s/Michael D. Hepperly
MICHAEL D. HEPPERLY, KSB# 09542
Michael D. Hepperly Law Office, Chtd.
310 W. Central, Suite 119
Wichita, KS 67202
Tel: (316) 267-5330
Fax: (316) 267-6589
Email: mhepperly@aol.com
*ATTORNEY FOR DEFENDANT*
*Gerald Beasley*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2015, I caused to be electronically filed, the foregoing **MOTION TO SUPPRESS EVIDENCE AND MEMORANDUM IN SUPPORT** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

s/Michael D. Hepperly
MICHAEL D. HEPPERLY