IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-10112-01-JTM |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD BEASLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO SUPPRESS EVIDENCE FROM CELL PHONES AND
ELECTRONIC DEVICES SEIZED FROM 1339 N. HILLSIDE
(TIARA'S PLACE), 1122 N. PIATT, 2001 N. COLT CT.,
AND FROM THE 2007 LINCOLN NAVIGATOR**

COMES NOW, the defendant, Gerald Beasley, by and through his attorney of record, Michael D. Hepperly, and moves the Court pursuant Rule 12(b)(3)(c) and the Fourth Amendment to the United States Constitution, to suppress any evidence discovered as a result of searches of cell phones and other electronic devices seized from 1339 N. Hillside, Wichita Kansas (Tiara's Place Restaurant); 1122 N. Piatt, Wichita, Kansas; 2001 N. Colt Ct., Andover, Kansas; and, the 2007 Lincoln Navigator VIN 5LMFU28537LJ20453 on or about June 12, 2012. The Defendant, through counsel, respectfully offers the following facts, authorities and argument in support of this motion.

On June 12, 2013, at approximately 8:50 a.m., Gerald Beasley was stopped by law enforcement while driving his 2007 Lincoln Navigator pursuant to a federal seizure warrant for the vehicle. At approximately the same time, federal search warrants were executed at his owner operated restaurant known as Tiara's Place located at 1339 Hillside, at his

residence located at 1122 N. Piatt, and his wife's residence where he still had personal property, including a home computer.  The raids began at approximately 9:00 a.m. and lasted nearly four hours later.

The seizure warrant for the 2007 Lincoln Navigator and the search warrants for 1339 N. Hillside, 1122 N. Piatt, 2001 Colt Ct. were  all issued by U.S. Magistrate Judge Kenneth Gale.  Each search warrant has an Attachment B which lists the items law enforcement is seeking to *seize* during their search of the properties. The list includes the usual items such as controlled substances, drug paraphernalia and United States Currency, firearms, tax and business records and indicia of occupancy. It also seeks to seize cellular telephones, digital devices, computers and other electronic devices that could "maintain, store, and/or transmit" records. *Id.* at 3. Finally the warrant seeks to seize "electronic information that would reveal evidence of drug trafficking, fraud, or money laundering, including but not limited to data stored on digital devices, computers, data storage devices, telephone answering machines, caller ID boxes, faxes, cellular phones, pagers, and personal digital assistants (PDAs);" *Id.* The warrant issued by Judge Gale allowed for the search of the subject properties and the seizure of cell phones and other electronic devices as well as the seizure of electronic information stored on such devices, it did not, however, allow for the search of those devices or the information stored on the devices. For this the government should have applied for a separate and distinct search warrant. *See Riley v. California*, __ U.S. __ , 134 S.Ct. 2473 (2014).

The seizure warrant for the vehicle was limited to seizing the vehicle. No other items were included to be seized from the vehicle. However, an Ipad that was in the Navigator was seized along with the vehicle.

During the search of 1339 N. Hillside, one cell phone and at least nine computers and Ipad type devices were seized including the business's Mac Apple desktop computer. The search of 1122 N. Piatt resulted in a seizure of five cell phones and two other electronic devices including an Ipad. One cell phone, at least five computers, laptops or tablets, as well as hard drives, disks, and SIMS cards were seized from 2001 N.Colt Ct.

Based only on the authority to search these three subject premises and to seize the vehicle, law enforcement conducted complete searches of all the information contained on each piece of seized electronics including the cell phones and all computer devices.

In *Riley v. California* the Supreme Court found that: "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life.' The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." *Id.* at 2494-95. As the Court explained: "Our holding, of course, in not that the information a cell phone is immune from search; it is instead that a warrant is generally required before such a search, *even when a cell phone is seized incident to arrest.*" *Id.* at 2493 (emphasis added). Based on the italicized language it is clear that the Supreme Court set a (nearly) bright-line rule for all searches of

cell phones, not just those seized incident to arrests.

As with any search warrant, a warrant for a cell phone, or any other electronic device that is capable of storing large amounts of digital information, such as a computer or an Ipad, must satisfy the particularity requirements of the Fourth Amendment. As the Court stated in *Riley:* "Our cases have recognized that the Fourth Amendment was the founding generation's response to the reviled "general warrants" and writs of assistance" of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Id.* at 2494.

The search warrants contained nothing regarding the search of cell phones or other electronic devices. The application for the warrant did not even indicate what type of information the government would expect to find on the cell phones if they were searched. Nor does it include what, in the affiant's training and experience, drug traffickers typically store on their cell phones.[1] The closest the application comes to particularly identifying information the affiant was seeking was when it asked to *seize*, not search, "electronic information that would reveal evidence of drug trafficking, fraud, or money laundering, including but not limited to data stored on digital devices, computers, data storage devices, telephone answering machines, caller ID boxes, faxes, cellular phones, pagers, and personal digital assistants (PDAs)." This generic and opened ended request to seize cannot constitute authority to search the contents of these devices, but even if it could it can only be considered an authorization to conduct illegal general search. *See Andresen v. Maryland*, 427 U.S. 463,

---

[1] For example see: Application for Search Warrant 13-M-6112-KGG at vii.

480 (1976) ("General warrants, of course, are prohibited by the Fourth Amendment").

The basis behind the Fourth Amendment's particularity requirement "was a wish to prevent the sort of warrants English kings once favored, ones that proscribed few limits on the scope of the search to be conducted and included no explanation why they were issued." *United States v. Christie* 717 F.3d 1156, 1164 (10th Cir. 2013). Establishing with particularity what is being searched for and where it is expected to be found, is essential for a valid warrant under the Fourth Amendment. Otherwise, the government is exercising its power under an unlawful general warrant. This is what occurred in respect to the search of the cell phones and other electronic devices that were seized from the vehicle and the subject premises on June 12, 2013.

Kansas Federal Magistrate Judge Waxse has taken a lead role in addressing the issues involving search warrants for cell phones and the particularity requirement. On December 30, 2014, he issued an order denying a search for several cell phones being held in DEA custody in Kansas City. His order in *In re: Cellular Telephones within Evidence Facility Drug Enforcement Administration, Kansas City District Office* 14-M-8017-DJW, explains the importance of the particularity requirement as it applies to cell phone searches and how that requirement is best met through the inclusion of the government's search protocol in its application for a warrant.

> Because searches of electronically stored information – be it a cell phone, thumb drive, or computer hard drive – expose substantial amounts of private, personal data to the government, an "explanation of the government's search techniques is being required in order to determine whether the government is executing its search in both good faith and in compliance with the probable

cause and particularity requirements of the Fourth Amendment."

*Id*. at 3, citing *In re Search of Three Cellphones and One Micro-SD Card* 14-M-8013-DJW

at 4 (D. Kansas August 4, 2014).

It is the prevention of general warrants "in the context of electronically stored information ("ESI")" that had has caused Judge Waxse to required an explanation of the government's search techniques. *Id.* at 7. Without a narrowly tailored warrant, the risk is that "the government will be able to access a plethora of information which it has no constitutional foundation to view." *Id.* at 11.

In *In re Search of A Nextel Cellular Telephone*, 14-M-8005-DJW (D. Kansas June 26, 2014) law enforcement submitted an application for a search warrant, which requested the Court's permission to conduct a full forensic examination of a cell phone. *Id*. at 4.  The exam was to include "a search of contact lists, calendars, stored image and video files, internet history, SMS and MMS text messaging, and other data related to drug sales, cultivation, and distribution." *Id*.  Further, the request set out a "Search Methodology" that was to be employed, including (1) exam all data…; (2) search for deleted, hidden, or encrypted data; (3) survey file directories; (4) open files to determine contents; (5) scan storage areas; (6) perform keyword searches; and/or (7) perform any other data analysis technique. *Id*. at 4-5.

Despite the sweeping language used by the government **the court denied the application** because there was no "guidance on *how* the government intends to determine what data has a nexus to the suspected crime and what data does not." *Id*. at 20.  Further,

Judge Waxse found that the government failed to indicate whether it would be imaging the device and, if so, how the data was to be accounted for; according to the court, such omission alone was fatal to the application. *Id*. Similarly, the court required the government to "explain, with particularity, its methodology for determining, once it is engaged in the search, how it will determine which [NAND flash drive] blocks should be searched for data within the scope of the warrant." *Id*. at 23.

In this case not only was there no discussion of the search protocol that would be used on the seized cell phones, there was no warrant issued, or even applied for, to search them.

As one looks down the list of items to be seized by the government during its search of the subject premises and the seizure of items seized from the vehicle, the incriminating nature of the item, or the item's evidentiary value is readily apparent: "all controlled substances"; "drug paraphernalia"; "firearms and ammunition"; "Banking records"; etc. This is not the case when dealing with cell phones and other digital devices. It is for this reason that a separate search warrant is required: so the government can make its case to a neutral and detached magistrate to determine whether there is probable cause to conduct a search of that particular device.

## PROBABLE CAUSE

A separate issue is the fact that the search warrants executed at the subject premises did not establish probable cause for the seizure of the myriad of cell phones and electronic devices that were seized by the government.

The warrant was executed on June 12, 2013. On June 3, 2013, a wiretap on Gerald

Beasley's phone (Identified in the wiretap warrant as Telephone Number (316) 409-4284 IMSI 310410406132152 and subscribed to Gerald Beasley) had terminated after being up for thirty days. During that time period Gerald Beasley had not changed his telephone number, or otherwise discarded his phone. Moreover, from approximately March 26, 2013 until June 3, 2013, the government had a wiretap up and running on Antoine Beasley's telephone. During the time of this tap, Gerald Beasley had been intercepted speaking with his son on the same phone.

While the government 1) *may* have had probable cause to seize and search the phone with which Gerald Beasley used on the wiretaps; 2) *may* have had probable cause to seize all phones located at the subject premises to determine which phone that might be[2]; and 3) *may* have had probable cause to seize "electronic information that would reveal evidence of drug trafficking . . "on *that* phone. The government may also have had reason to inventory any electronic devices in the vehicle prior to impounding it.  However, the government certainly did not have probable cause, or the authority under the existing warrant to search all of the phones, the other electronic equipment, the electronic information on the devices seized at the residence, or the electronic information in the Navigator.

The "good faith" exception to the exclusionary rule created in *United States v. Leon*, 468 U.S. 897 (1984), is inapplicable herein. In *Leon,* the Supreme Court modified the Fourth Amendment's exclusionary rule to provide that evidence seized under a warrant later found to

---

[2] Neither point Gerald Beasley concedes. Gerald Beasley would direct the Court to his motion to suppress the search of 1122 N. Piatt and 1339 N. Hillside for the discussion on lack of probable cause and the lack of nexus.

8

be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant. *Id.* at 913. The "good faith" exception permits the admission of evidence from a search warrant subsequently invalidated by a lack of probable cause. *Id.* at 922.

In *Leon*, the Court made it clear that it is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in the opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *Leon* at 923. *See also Whiteley v. Warden*, 401 U.S. 560, 568 (1971).

There are circumstances when evidence seized in good faith pursuant to a defective warrant will be suppressed.

> Suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, or if the issuing magistrate wholly abandoned his detached and neutral judicial role. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Leon* at 898-899. This affidavit was so lacking in indicia of probable cause regarding the search of the cell phones and other electronic devices as to render official belief in its existence entirely unreasonable.

Any and all evidence seized from the cell phones or other electronic devices pursuant to the June 12, 2013, search warrants of 1339 N. Hillside, 1122 N. Piatt, 2001 Colt Ct, and pursuant to the seizure of the 2007 Lincoln Navigator was fruit of an illegal search and is inadmissible under *Wong Sun v. United States*, 371 U.S. 471 (1963).

WHEREFORE, Defendant respectfully requests of the Court an order in conformity with the above and foregoing Motion and such other and further relief as to the Court seems just. Counsel respectfully requests a hearing and oral argument on this motion.

RESPECTFULLY SUBMITTED,

s/Michael D. Hepperly
MICHAEL D. HEPPERLY, KSB# 09542
Michael D. Hepperly Law Office, Chtd.
310 W. Central, Suite 119
Wichita, KS 67202
Tel: (316) 267-5330
Fax: (316) 267-6589
Email: mhepperly@aol.com
  *ATTORNEY FOR DEFENDANT*
  *Gerald Beasley*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2015, I caused to be electronically filed, the foregoing **MOTION TO SUPPRESS EVIDENCE FROM CELL PHONES AND ELECTRONIC DEVICES SEIZED FROM 1339 N. HILLSIDE (TIARA'S PLACE), 1122 N. PIATT, 2001 N. COLT CT., AND FROM THE 2007 LINCOLN NAVIGATOR** with the Clerk of the Court by using the CM/ECF  system which will send a notice of electronic filing to all parties of record.

s/Michael D. Hepperly_____
MICHAEL D. HEPPERLY

11