1

```
 1                IN THE UNITED STATES DISTRICT COURT
                           DISTRICT OF KANSAS
 2

 3  THE UNITED STATES OF AMERICA,

 4            Plaintiff,

 5        vs.                          District Court
                                       Case Number
 6  GERALD BEASLEY,                    13-10112-01
    ANTOINE BEASLEY,                   13-10112-03
 7  CARLOS BEASLEY,                    13-10112-04
    HELEN BEASLEY,                     13-10112-05
 8  TERRY BEASLEY,                     13-10112-06
    HERBERT JONES,                     13-10112-07
 9  WILLIAM PARKER, III,               13-10112-08
    STEPHEN SMALLWOOD,                 13-10112-10
10  BRANDON SMITH,                     13-10112-11
    GERALD WILSON,                     13-10112-12
11                                     Volume 1
              Defendants.
12

13            TRANSCRIPT OF PROCEEDINGS

14        On the 11th day of April, 2016 at 9:00 a.m.
    came on to be heard in the JAMES hearing  in the
15  above-entitled and numbered cause before the
    HONORABLE J. THOMAS MARTEN, Judge of the United States
16  District Court for the District of Kansas, Sitting in
    Wichita.
17        Proceedings recorded by mechanical
    stenography.
18        Transcript produced by computer.

19
    APPEARANCES
20
         The United States Government appeared by and
21  through:
             Ms. Michelle Jacobs, Special AUSA
22           Mr. Aaron Smith, AUSA
             301 N. Main, Suite 1200
23           Wichita, Kansas 67202

24

25
```

Jana L. McKinney, CSR, RPR, CRR, RMR
United States Court Reporter


DEFENDANT'S EXHIBIT C

281

```
 1  linesheets.
 2  Q.    Okay.  Well, you would have --
 3        THE COURT:  I'm sorry, Mr. Falk, I'm having
 4  trouble hearing you when you're away.  You can pull the
 5  mike out TO the side if you prefer to be there.
 6        MR. FALK:  I'm sorry.
 7  BY MR. FALK:
 8  Q.    When you listened to the tapes, and compared
 9  them with the transcripts, if there was something that
10  was obviously wrong, you would have brought that to
11  someone's attention, would you not?
12  A.    If -- if it was beyond a simple spelling mistake
13  or -- or something like that.  If it was something of
14  substance, absolutely.
15  Q.    Okay.  Now, again, going back to the front,
16  there are little -- the -- what I'm going to refer to
17  as the cheat sheet, the Government's listing of
18  everything here.
19        They say that the first comment made by any
20  one is 1c, that involves Mr. Stephen Smallwood,
21  correct?
22        His name doesn't appear on 1a, or 1b and it's
23  not talking about any counts other than Count 28 until
24  we get to that conversation.
25  A.    These are not all inclusive of their
```

282

1  conversations.
2  Q.    I understand.  But that's the first one that
3  names Stephen Smallwood in who this evidence is being
4  offered against, correct?
5  A.    Yes.
6  Q.    Okay.  Now then, Mr. Smallwood's name does not
7  appear anywhere in that document, does it?
8  A.    Well, which document?  The linesheet?
9  Q.    No, I -- let me rephrase.
10        The transcript which is behind Tab 1 makes
11 absolutely no mention of Stephen Smallwood.
12 A.    That -- that is correct.
13 Q.    Okay.  Now then, the next one which is being
14 offered against Stephen Smallwood is part of a
15 telephone conversation that took place between Gerald
16 Beasley and Anita Burkley on 4-5 of 2013, correct?
17 A.    Yes, that's correct.
18 Q.    Okay.  And, it appears after the tab, correct?
19 A.    Yes.
20 Q.    Okay.  And there is nothing -- when you reviewed
21 the transcript and compared it to the tape, did you
22 find that there was anything in that conversation that
23 referenced Mr. Stephen Smallwood?
24 A.    In -- not in this call, no.
25 Q.    Now then, let's turn to the next one, that is 3,

283

```
 1  that is a telephone conversation between Gerald Beasley
 2  and Antoine Beasley, correct?
 3  A.     Yes.
 4  Q.     And, again, that evidence 3a and 3b, that's all
 5  part of the same conversation, right?
 6  A.     Yes.
 7  Q.     And nowhere in that conversation is
 8  Mr. Smallwood mentioned, correct?
 9  A.     That's correct.
10  Q.     And there's no references to him, either, are
11  there?  In the third tab?
12  A.     Yes, that's -- that's correct.
13  Q.     Okay.  Now then, turning to Number 4, that's the
14  next item of evidence that's being offered against
15  Stephen Smallwood, correct?
16         Going down through the notebook.
17  A.     Yes, that's correct.
18  Q.     Okay.  And, again, that's a recorded
19  conversation between Gerald Beasley and Terry Beasley,
20  is that right?
21  A.     That is correct.
22  Q.     And nowhere in that conversation is
23  Mr. Smallwood's name mentioned?
24  A.     That's correct.
25  Q.     And nowhere in that conversation is there any
```

284

```
 1  reference to Mr. Smallwood?
 2  A.    That's correct.
 3  Q.    Now then, let's turn to Number 5.  Okay?
 4        That is a conversation which took place
 5  between Stephen Smallwood and Gerald Beasley, according
 6  to your transcript, correct?
 7  A.    Correct.
 8  Q.    How did you know that the party on the other end
 9  of the phone was Stephen Smallwood?
10  A.    Well, it's a phone number that was identified as
11  belonging to Stephen Smallwood.
12  Q.    Okay.
13  A.    I believe there was other calls where he might
14  mention or address him as Stephen.  But I did not
15  actually see him making the call, so...
16  Q.    Well, the 316-409-4284 --
17  A.    Mm-hmm.
18  Q.    -- that's Mr. Beasley's number, correct?
19  A.    Correct.
20  Q.    And the associated number, 316-871-1442?
21  A.    Correct.
22  Q.    Whose telephone number is that?
23  A.    It belonged to Stephen Smallwood.
24  Q.    Now then, going through this, there are five
25  different parts of this that are being used, is that
```

Jana L. McKinney, CSR, RPR, CRR, RMR
United States Court Reporter

1  correct?  5a, b, c, and -- excuse me, up through e,
2  correct?
3  A.    Actually, it goes through 5g.
4  Q.    Well, that's actually a separate conversation,
5  though, is it not?
6        Items 5a --
7  A.    Yes.
8  Q.    -- through 5e pertain to the conversation
9  between Gerald Beasley and Stephen Smallwood?
10 A.    That's correct.
11 Q.    Okay.  We'll get to the other conversation in a
12 moment.
13        Now, again, you've had an opportunity to
14 compare the transcript of that conversation with the
15 audio recording, is that correct?
16 A.    Yes.
17 Q.    Okay.  And, again, you didn't find any
18 discrepancies, correct?
19 A.    Nothing of substance that I remember.
20 Q.    Okay.  Now, you say that based upon how you
21 would interpret this, that they're talking about money
22 owed by my client to Mr. Beasley, correct?
23 A.    Yes.
24 Q.    And your basis for drawing that inference is all
25 these 3,000 plus telephone conversations you've

```
 1  listened to, correct?
 2  A.     That's part of it.
 3  Q.     Okay.  Let's talk about that for just a minute.
 4         This and perhaps one other are the only two
 5  conversations that Mr. Smallwood has with anyone
 6  associated with the wiretaps in these cases, isn't that
 7  correct?
 8  A.     No, there's other calls besides this one between
 9  Stephen Smallwood and Gerald Beasley.
10  Q.     Does the conversation set forth as part of the 5
11  tab mention heroin?
12  A.     Not by name, no.
13  Q.     Okay.  In other words, you're asking this Court
14  to adopt your interpretation of the plain language that
15  appears in these statements?
16  A.     Yes.
17  Q.     Let's turn to the 5e and f.
18             Excuse me, f and g.
19         Those are part of a conversation between
20  Gerald Beasley and Terry Beasley, correct?
21  A.     Correct.
22  Q.     Okay.  And all -- and that particular
23  conversation asks whether or not Gerald has seen
24  someone that day, correct?
25  A.     Yes.
```

287

```
 1  Q.    And Gerald tells Terry, yes, he has seen them,
 2  correct?
 3  A.    At first he asks him if he talked to someone
 4  that morning.
 5  Q.    Mm-hmm.
 6  A.    And then Gerald states, Yeah.
 7  Q.    And then Terry asks, Yeah, already, you have
 8  already seen him?
 9        The response by Gerald Beasley:  I said yes,
10  Terry?
11  A.    Correct.
12  Q.    Okay.  Now, none of the cameras or pole cameras,
13  whatever the proper name for them is, I know I'll
14  butcher that, they don't show Gerald Beasley and my
15  client getting together that morning anywhere, do they?
16  A.    Not to my knowledge, no.
17  Q.    Thank you.
18        Now, the next item which the Government is
19  offering against my client, I believe is item 11, so we
20  get to fast forward.
21        Item 11 is being offered against Stephen
22  Smallwood again, correct?
23  A.    Correct.
24  Q.    Okay.  Nowhere in that document is there any
25  mention of Mr. Smallwood, correct?
```

288

```
 1   A.     Correct.
 2   Q.     Okay.  It's talking about Little Brother and Big
 3   Brother, right?
 4   A.     Uh, correct.
 5   Q.     And Mr. Beasley -- Mr. Smallwood is not either
 6   Little Brother or Big Brother, is he?
 7   A.     I don't believe he is, no.
 8   Q.     Okay.  Now, the next item that you offer is
 9   still part of that same conversation where Antoine is
10   saying to Terry Beasley -- or excuse me, to Gerald
11   Beasley, That Uncle Terry show me game.  Uncle Terry
12   show his son some action, right?
13   A.     Correct.
14   Q.     That, again, does not mention Mr. Smallwood,
15   does it?
16   A.     That's correct.
17   Q.     And there's no reference in that entire
18   telephone conversation to Mr. Smallwood, correct?
19   A.     Correct.
20   Q.     Okay.  Now, the next item is Number 12 and that
21   is a telephone conversation which occurred on 4-2 of
22   2013 between Anita Burkley and Gerald Beasley, correct?
23   A.     Correct.
24   Q.     And that is the one where you testified on
25   direct examination she slipped and said Steve, and you
```

```
 1  took that to mean that it was Steve Smallwood, correct?
 2  That was your testimony on direct examination.
 3  A.    Could -- could I see the, um...
 4  Q.    Well, look at item 12 which follows that.  Item
 5  12 is the verbatim transcript?
 6  A.    Right.
 7  Q.    Okay.  That's referenced in the note 12,
 8  correct?
 9        I mean, I'm assuming that the Number 12 on the
10  cheat sheet applies to Tab 12, would that be a logical
11  assumption?
12  A.    Yes.
13  Q.    Okay.  And that is a verbatim transcript, you've
14  identified that all of these were verbatim transcripts,
15  correct?
16  A.    As the transcript made at the time of the call,
17  correct.
18  Q.    Okay.  Now then --
19  A.    Or shortly thereafter, I should say.
20  Q.    Nowhere in this transcript does the name Steve
21  appear?
22  A.    Not in this transcript, no.
23  Q.    Okay.  And this is a verbatim transcript of the
24  conversation, correct?
25  A.    Um, that was made at that time.
```

```
 1  BY MR. FALK:
 2   Q.    I believe the next item dealing with the cocaine
 3  conspiracy -- or excuse me, the heroin conspiracy,
 4  Count 17, is item 14 and, again, there's no reference
 5  in item Number 14 to Mr. Smallwood?
 6   A.    That's correct.
 7   Q.    Now, the next item -- the next item is Number 16
 8  and, again, that's a telephone conversation between
 9  Antoine Beasley and Gerald Beasley, correct?
10   A.    Correct.
11   Q.    Okay.  And that has nothing to do with Stephen
12  Smallwood.  There's no mention of Mr. Smallwood,
13  correct?
14   A.    There's no mention of him.
15   Q.    Number 17 -- excuse me.  Strike that.
16         The next one would be Number 19 that's offered
17  against my client.  Again, no references to Mr.
18  Beasley -- or excuse me, to Mr. Smallwood in that?
19   A.    That -- that's correct, he's not mentioned by
20  name there.
21   Q.    And the same is true of all of these
22  transcripts, save the one that is 5, the one that's
23  behind Tab 5?
24   A.    Yes.
25   Q.    Okay.  Now, you said that you relied upon some
```